IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

vs.

DANIEL LEE WILSON,

Defendant.

No. CR08-2020

REPORT AND RECOMMENDATION

———————————

## TABLE OF CONTENTS

*I.*    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*II.*   *PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*III.*  *ISSUE PRESENTED* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*IV.*   *RELEVANT FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*V.*    *DISCUSSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
        *A.*    *Did Entry Onto the Curtilage Violate the Fourth Amendment?* . . . . . 5
        *B.*    *Did Entry Into the Porch Violate the Fourth Amendment?* . . . . . . . . 7

*VI.*   *RECOMMENDATION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## I. INTRODUCTION

On the 29th of December 2008, this matter came on for hearing on the Motion to Suppress (docket number 16) filed by the Defendant on December 15, 2008. The Government was represented by Special Assistant United States Attorney Dan Chatham. Defendant Daniel Lee Wilson appeared personally and was represented by attorney JoAnne Lilledahl.

## II. PROCEDURAL BACKGROUND

On September 25, 2008, Defendant Daniel Lee Wilson was charged by Indictment (docket number 1) with the manufacture of marijuana in a school zone and being a drug user in possession of a firearm.[1] Defendant entered a plea of not guilty and trial was scheduled before Chief Judge Linda R. Reade on January 20, 2009. On December 23, 2008, however, Defendant filed a Notice of Intent to Plead Guilty (docket number 20). Pursuant to Defendant's notice, a plea change hearing was held on January 5, 2009 and Defendant entered conditional pleas of guilty to both counts of the Superseding Indictment (docket number 5). Defendant reserved the rights raised in his motion to suppress.

## III. ISSUE PRESENTED

Defendant claims that the uninvited and warrantless entry into his enclosed porch on May 3, 2008, violated the Fourth Amendment; and any evidence or observations obtained by police officers, including those obtained pursuant to a subsequent search warrant, should be suppressed.

## IV. RELEVANT FACTS

On May 3, 2008, the Oelwein Police Department received a complaint about two dogs running loose in town. Defendant was believed to be the owner of the two dogs. Police Officer Jay Tommasin was dispatched to Defendant's residence located on 3rd Avenue SW in Oelwein, in order to speak with him about retrieving and containing the dogs.

At the front of Defendant's residence, there are five wooden steps leading up to a wooden deck or landing. The wooden deck is approximately four feet wide by four feet deep. The deck leads to an enclosed porch which extends out from the house. The enclosed porch is approximately five feet wide and three to four feet deep. There is a storm door with a large glass window and a lockable handle which leads into the porch.

---

[1] A Superseding Indictment (docket number 5) was filed on October 22, to make a technical correction.

On the door jamb, approximately 12 inches from the door handle, there is a doorbell on the outside of the porch. There is also a mailbox located near the storm door.[2]

Inside the porch, leading into the house, there is a wooden door with a diamond shaped window, measuring approximately 12 inches by 12 inches.[3] The window is covered on the inside by an American flag and two stickers. The enclosed porch has windows on either side, which are covered by curtains. At the hearing, Defendant testified that he stores things of value on his porch, such as coats, fishing poles, and tools, among other things.

On May 3, 2008, Officer Tommasin arrived at Defendant's residence at approximately 8:45 p.m. According to Officer Tommasin, he could hear music coming from the house and could see the silhouette of people inside. He knocked on the porch's exterior storm door three separate times, but received no response. At the hearing, Officer Tommasin conceded that generally when someone does not respond to a knock at the door, he then looks for a doorbell. When asked if he looked in this case, he responded that "I really do not recall to the best of my knowledge." Because he received no response after knocking on the exterior porch door, Officer Tommasin entered the porch and knocked twice on the wooden door inside the porch. Looking through the window on the interior door, on the second knock he could see movement and individuals sitting at a kitchen table.

After the second knock, Defendant's girlfriend, Felicia Klein, answered the door. Officer Tommasin testified that when the door was opened, he could smell a "moderate odor of burnt marijuana smoke" emanating from the residence. Officer Tommasin asked to speak with Defendant, and Defendant came to the door. According to Officer Tommasin, Defendant's eyes were "bloodshot and watery." Defendant and Officer

---

[2] Photographs of the exterior front of the house were introduced as Government's Exhibit 1 and Defendant's Exhibits A1-A3, A5-A7, A12, and A16.

[3] *See* Defendant's Exhibit A10.

Tommasin moved to the wooden deck outside of the porch. Officer Tommasin asked Defendant about the dogs, and Defendant admitted that they were his dogs. Officer Tommasin also asked Defendant if he and the others inside the house were smoking marijuana. Defendant admitted that he and the others were smoking marijuana. Officer Tommasin requested permission to search Defendant's residence. Defendant denied the officer's request.

Officer Tommasin left Defendant's residence and obtained a search warrant for the residence. Police officers returned to the residence around 11:20 p.m. Pursuant to the search warrant, the police officers seized eight marijuana plants, marijuana seeds, drug paraphernalia, and three firearms from the residence.

## V. DISCUSSION

In this case, the incriminating evidence (growing marijuana plants and firearms) were seized pursuant to a state search warrant. While neither the search warrant application nor the supporting affidavit were submitted as evidence at the instant hearing, the Court assumes that probable cause to search the residence was established by Officer Tommasin detecting the odor of burnt marijuana smoke, observing Defendant's bloodshot and watery eyes, and Defendant's admissions that he and others were smoking marijuana. Defendant argues that the evidence should nonetheless be suppressed, however, because the observations supporting the issuance of the warrant were made by Officer Tommasin while he was in a location where he had no right to be. *United States v. Swope*, 542 F.3d 609, 613-14 (8th Cir. 2008). Accordingly, both sides focus on the critical issue: Did Officer Tommasin's warrantless entry into Defendant's enclosed porch violate the Fourth Amendment?

The Fourth Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, protects persons "against unreasonable searches and seizures." The "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Payton v. New York*, 445 U.S. 573, 585 (1980)

4

(quoting *United States v. United States District Court*, 407 U.S. 297, 313 (1972)). "It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Id.* at 586 (citing *Coolidge v. New Hampshire*, 403 U.S. 443 (1971)).

## A. *Did Entry Onto the Curtilage Violate the Fourth Amendment?*

In his brief, Defendant argues that "[s]ince the Defendant's front porch is either part of the actual home itself, or at the very least is curtilage, it is protected by the Fourth Amendment."[4] The protections afforded by the Fourth Amendment extend to the curtilage of a house. *Oliver v. United States*, 466 U.S. 170, 180 (1984). "Curtilage" was defined by the Court as "the area to which extends the intimate activity associated with the sanctity of a man's home and the privacies of life." *Id.* Not every intrusion onto curtilage, however, violates the Fourth Amendment.

In *United States v. Weston*, 443 F.3d 661 (8th Cir. 2006), law enforcement officers proceeded through an unlocked gate at the end of a driveway and approached the front door of the defendant's residence to inquire about stolen vehicles. While standing at the defendant's front door, officers observed contraband in plain view. The government conceded that "the officers entered the curtilage of Weston's home" without a warrant. Recognizing that the Fourth Amendment's protection extends to the curtilage surrounding a home, the Court nonetheless concluded that the officers' entry was reasonable and not violative of the Fourth Amendment.

> Where a legitimate law enforcement objective exists, a warrantless entry into the curtilage is not unreasonable under the Fourth Amendment, provided that the intrusion upon one's privacy is limited.

*Id.* at 667.

The Court reached the same conclusion in *United States v. Raines*, 243 F.3d 419 (8th Cir. 2001). There, the deputy approached the house "in the good faith attempt to

---

[4] Brief in Support of Motion to Suppress (docket number 16-2) at 5-6.

serve civil process." *Id.* at 422. Getting no response at the front door, the officer walked around to the backyard, thinking that it was likely the occupants were outside on a pleasant summer evening. *Id.* at 421. In going to the backyard, the deputy walked through a 10-foot wide opening in a makeshift fence that encircled the property. *Id.* When he got to the backyard, the deputy observed marijuana plants in plain view. Noting that the deputy "was not looking to find contraband," the Court concluded that he did not violate the defendant's Fourth Amendment rights by entering the curtilage of his home. *Id.* at 421-422. *See also United States v. Anderson*, 552 F.2d 1296, 1300 (8th Cir. 1977) ("We cannot say that the agents' actions in proceeding to the rear after receiving no answer at the front door was so incompatible with the scope of their original purpose that any evidence inadvertently seen by them must be excluded as the fruit of an illegal search.").

Turning to the facts in the instant action, the Court agrees with Defendant that the enclosed porch was, "at the very least," within the curtilage of his house. As set forth above, however, a warrantless entry onto the curtilage does not violate the Fourth Amendment if the intrusion is limited and for a legitimate purpose. *Weston*, 443 F.3d at 667. Here, Officer Tommasin approached the residence to investigate a complaint of dogs running at large. There is no evidence that he knew Defendant was growing or smoking marijuana, or that the visit to the house was mere pretense to a larger investigation. Officer Tommasin could see persons inside the house and could hear music. When Officer Tommasin did not receive any response to his knocking on the storm door, he entered the small enclosed porch and knocked on the interior door. In order for a member of the general public to enter Defendant's home, it is necessary that they proceed through the enclosed porch. The Court believes that Officer Tommasin's entry into the porch was reasonable under the circumstances.[5] The intrusion was limited and for a legitimate

---

[5] The Court has not disregarded the fact that Officer Tommasin did not try the doorbell. That fact alone, however, does not render the entry unreasonable.

6

purpose. *Weston*, 443 F.3d at 667. Accordingly, it was not unreasonable under the Fourth Amendment.

### B. Did Entry Into the Porch Violate the Fourth Amendment?

A more difficult issue is whether the enclosed porch is part of the "house" itself, and not merely curtilage, and thereby afforded additional protection. Unquestionably, the Fourth Amendment protects the sanctity of a person's home against unreasonable searches. As stated by the Court in *Payton*, "the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." 445 U.S. at 590.

The courts have wrestled, however, with the issue of where the "threshold" should be drawn. The question was aptly described by the North Dakota Supreme Court as follows:

> But, what or where is the threshold to a house? Where should the line be drawn when a house has an enclosed porch, vestibule, or entryway attached to the home?

*State v. Kitchen*, 572 N.W.2d 106, 109 (N.D. 1998).

The facts in *Kitchen* are remarkably similar to those in the instant action. Officers went to the Kitchens' residence, attempting to locate a person for whom they had an arrest warrant. The residence "had one entrance, a narrow enclosed entryway with steps leading to an inner door approximately five or six feet away. The outer door was a metal storm/screen door with a large glass window. The outer door did not have a curtain or other window covering, and could only be locked from the inside. The officers could see the inner door from outside the outer door." *Id.* at 107. The officers rang the doorbell, but received no answer. "After waiting what the trial court determined was a reasonable period of time, the officers, assuming the residents could not hear the doorbell because of loud music coming from the home, entered the enclosed entryway and proceeded down the steps toward the inner door." *Id.* When the inner door was opened, the officers could smell the odor of marijuana. When the occupants refused entry to the residence, the

officers obtained a search warrant. *Id.* at 108. After being charged with possession of a controlled substance, the defendants moved to suppress the evidence.

> They argued they had an expectation of privacy in the entryway to their home, and therefore, the officers' obtaining probable cause for a search warrant by smelling the marijuana while in their private entryway violated their right to be secure against unreasonable searches and seizures.

*Id.*

The Court noted that "[i]n order for the entryway to the Kitchens' home to be a protected area under the Fourth Amendment, the Kitchens must have a subjective expectation of privacy in their entryway that society would view as objectively reasonable." *Id. See, e.g., Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring). After reviewing the particular characteristics of the defendants' home, the Court concluded that the entry by the officers was "reasonable" and therefore not violative of the Fourth Amendment.

> We do not think it unreasonable that the police officers stepped into the entryway of the Kitchens' home to knock at the inner door, after ringing the doorbell and waiting a reasonable period of time, given the fact loud music was playing. Even though the Kitchens subjectively did not expect visitors to enter the unlocked, uncovered storm/screen door on the entryway to their house, it was impliedly open to at least some access by the public.

*Id.* at 112. *But see, State v. Kochel*, 744 N.W.2d 771 (N.D. 2008) (holding that officers violated the Fourth Amendment when they made a warrantless entry into an addition "large enough to accommodate a small room," and when the resident had posted a "no hunting or trespassing" sign on the steps outside the home).

Several state courts have concluded that there is a diminished expectation of privacy in an enclosed porch. In *People v. Tierney*, 703 N.W.2d 204 (Mich. App. 2005), the defendant asserted that certain statements and physical evidence should have been suppressed "because they were obtained as a result of the police officers' unlawful entry

into the enclosed porch of defendant's parents' home." *Id.* at 212. There were many items of personal property stored on the porch, including a dishwasher. The porch was unheated, however, and was used as an entryway into the house. "For the most part, the porch did not have the characteristics of a living area. Rather, it was an unheated area used primarily as a storage space." *Id.* at 217. The Michigan Court of Appeals found that "[t]here was no intention or attempt to search the porch or its contents. Instead, the officers merely attempted to gain the attention of the occupant of the house, who, presumably because of the loud music, could not hear a knock on the porch door." *Id.* The Court concluded that the officers' actions were reasonable, did not violate a reasonable expectation of privacy, and did not violate the Fourth Amendment. *Id.*

The Wisconsin Court of Appeals reached a similar conclusion in *State v. Edgeberg*, 524 N.W.2d 911 (Wis. App. 1994). An officer was dispatched to investigate a complaint about a barking dog. When directed to the defendant's house, the officer approached "a porch or vestibule-like addition to the house." *Id.* at 913. There was a wooden screen door at the entrance to the porch, which could be opened with a lightweight latch. The door could be locked from the inside, but was unlocked. The door to the interior of the house was about six feet from the outer door. The defendant's washer and dryer and work clothes were inside the porch. Looking through the screen of the outer door, the officer could see the inner door. The officer testified that his "general procedure" was to knock on the outside door, but if he did not receive any response, then he would enter the porch and knock on the door leading to the living area. As he was knocking on the inner door, the officer looked through the window of the door and saw growing marijuana plants. *Id.* at 914. Based on this observation, the officer obtained a search warrant.

The question presented in *Edgeberg* was "whether the officer had prior justification for his presence or, in other words, had a right to be where he was." *Id.* In affirming the defendant's conviction for possession of marijuana with intent to manufacture, the Court concluded that there was no Fourth Amendment violation.

> We conclude, under the circumstances presented, that there
> was no reasonable expectation of privacy that should bar the
> officer's approach to the inside door of the residence.
> Although Edgeberg's porch may have been a laundry area, it
> was also an entryway.

*Id.* at 914-15. Similarly, in *People v. Arias*, 535 N.E.2d 89 (Ill. App. 1989), the Court held that no constitutional violation occurred when the porch was not a living area and the officers entered the porch merely to knock on the front door to the residence. *See also People v. Greene*, 682 N.E.2d 354 (Ill. App. 1997).

Turning to the facts in the instant action, the enclosed porch on Defendant's house is small, measuring approximately five feet wide and three to four feet deep. The outside storm door has a large double window which allows easy view into the porch. While the outside storm door is capable of being locked, Defendant testified that he never locks it. The enclosed porch contained a coat tree, boots, some chimney pipes, and a few other miscellaneous items. The porch extends out from the front of the house and is the main entryway for the public entering the house. There is a doorbell adjacent to the outside storm door.

On May 3, 2008, Officer Tommasin approached the house to investigate a complaint of dogs running at large. There is no evidence that the investigation was a pretext for visiting the house for some other purpose. That is, Officer Tommasin apparently had no prior knowledge that Defendant was growing marijuana or was a drug user in possession of a firearm. Officer Tommasin knocked on the outside storm door three separate times. He received no response, but looking through the large window of the outer door and the smaller window of the inner door, he could see a silhouette of persons inside the house and he could hear music coming from inside. Assuming that the occupants had not heard him, Officer Tommasin entered the small enclosed porch and knocked on the interior door. The occupants did not respond until after his second knock.

The "touchstone" of Fourth Amendment analysis is whether a person has a "constitutionally protected reasonable expectation of privacy." *Oliver*, 466 U.S. at 177. "The Amendment does not protect the merely subjective expectation of privacy, but only those 'expectations that society is prepared to recognize as reasonable.'" *Id.* (quoting *Katz*, 389 U.S. at 361). After carefully considering the circumstances surrounding Officer Tommasin's warrantless entry into Defendant's enclosed porch, the Court concludes that there was no violation of the Fourth Amendment's prohibition against "unreasonable searches." The enclosed porch was the main entryway to the house. The small area was not used as a living space. The interior door could be seen through the glass window in the outer door. The Court concludes that Defendant did not have an objectively reasonable expectation of privacy under these circumstances.[6] Accordingly, the Court believes that there was no Fourth Amendment violation and Defendant's motion to suppress on that ground should be denied

## VI. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the District Court deny the Motion to Suppress (docket number 16) filed by the Defendant on December 15, 2008.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1)(B), that within ten (10) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court. *Defendant is reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections." Accordingly, if Defendant is going to object to this Report and*

---

[6] One can imagine any number of scenarios where a person might enter the porch and knock on the inner door to get the attention of the occupant who can be seen within: a newspaper boy trying to collect, a UPS man trying to deliver a package, or a Girl Scout trying to sell cookies, to name a few.

*Recommendation, he must promptly order a transcript of the hearing held on December*

*29, 2008.*

DATED this 14th day of January, 2009.

_____

JON STUART SCOLES
United States Magistrate Judge
NORTHERN DISTRICT OF IOWA